FILED
JUN 01 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

D80

(5)
IFP
~~AO~~ Summons not issued

Your Name: Lamos Sturgis
Your Address: 2816 Pistachio Ct., Antioch, CA 94509
Phone Number: (925) 293-6050
Email Address: shylareed95@gmail.com
Pro Se Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lamos Sturgis<br>Plaintiff,<br>v.<br>City of Pittsburg, Officer Gerry Graner, Does 1-10<br>Defendant. | Case Number [leave blank] CV26 . 05201 AGT<br>**COMPLAINT**<br>DEMAND FOR JURY TRIAL<br>Yes ■ No ☐ |

## I. PARTIES

1. Plaintiff. [Write your name, address, and phone number. Add a page for additional plaintiffs.]

Name: Lamos Sturgis
Address: 2816 Pistachio Ct., Antioch, CA 94509
Telephone: (925) 293-6050

2. Defendants. [Write each defendant's full name, address, and phone number.]

Defendant 1:
Name: City of Pittsburg, CA
Address: City Hall, 65 Civic Avenue, Pittsburg, CA 94565
Telephone: (925) 252-4850 - City Clerk/City Attorney's Office

Defendant 2:

Name: Pittsburg Police Office Gerry Graner, #596

Address: Pittsburg Police Department, 65 Civic Avenue, Pittsburg, CA 94565

Telephone: (925) 252-4980 - Business Office

Defendant 3:

Name: Doe Officers 1 - 10

Address: Pittsburg Police Department, 65 Civic Avenue, Pittsburg, CA 94565

Telephone: (925) 252-4980 - Business Office

## II. JURISDICTION

Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.

3. My case belongs in federal court

■ under federal question jurisdiction because it involves a federal law or right.

Which federal law or right is involved?

42 U.S.C. Section 1983, 4th Amendment to the U.S. Constitution

☐ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

## III. VENUE

The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.

4. Venue is appropriate in this Court because:

■ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity and I live in this district.

☐ at least one defendant is located in this District and any other defendants are located in California.

## IV. INTRADISTRICT ASSIGNMENT

This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka-McKinleyville. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka-McKinleyville division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.

5. Because this lawsuit arose in Contra Costa County, it should be assigned to the San Francisco/Oakland Division of this Court.

## V. STATEMENT OF FACTS

Write a short and simple description of the facts of your case. Include basic details such as where the events happened, when things happened and who was involved. Put each fact into a separate, numbered paragraph, **starting with paragraph number 6**. Use more pages as needed.

6. Plaintiff, Lamos Wayne Sturgis, is an adult resident of Contra Costa County, California.

7. On April 3, 2026, Plaintiff was parked in a marked stall near Riverview Park Drive in Pittsburg, California. After spending time fishing, he prepared to leave the area. He placed his belongings in his vehicle, and he sat down in the driver's seat.

8. Plaintiff decided to use the restroom before leaving, so he started to roll up his windows to lock his car. As he was closing his windows, Officer Gerry Graner (#596) of the Pittsburg Police Department, drove up directly in front of Plaintiff's car, quickly exited his patrol vehicle, and approached Plaintiff.

9. Without warning, Officer Graner pulled Plaintiff's door open, placed his leg and foot inside the door to prevent the door from closing, and confronted Plaintiff in an aggressive manner, demanding Plaintiff's identification.

10. Plaintiff asked why he was being targeted, explaining that he had not committed any crime and was not even driving. Officer Graner stated that he saw Plaintiff leave the marina a day prior, he thought it suspicious, and he wanted to identify him.

11. Plaintiff asked what he had done that was suspicious and for what crime he was being detained. Officer Graner did not reply to the questions, only that he "want(ed) to do something to" Plaintiff. in a very threatening manner. Plaintiff eventually gave his identification to Officer Graner and asked what it was that the officer wanted to do to him. Officer Graner now responded that he wanted to perform a field sobriety check and ordered Plaintiff to step out of the vehicle.

12. When Plaintiff complied by exiting his vehicle, with his hands raised, without warning, additional officers immediately started touching and grabbing Plaintiff. When Plaintiff asked why they were grabbing him, those officers immediately escalated the situation without any justification—by forcefully taking him to the ground and placing him in handcuffs behind his back

13. A crowd had gathered and was loudly challenging the officers' treatment of Plaintiff. Many in the crowd, pulled out their phones and began filming the situation, and those videos are posted on YouTube.

14. Plaintiff did not resist, threaten, or engage in any conduct that justified the use of force. Despite this, one officer placed an arm around Plaintiff's neck while other officers seized each of his arms. In this manner, by his neck and arms, the group of officers lifted Plaintiff off the ground and attempted to force him into a patrol car.

15. When they failed to place him in the car, the officers again took Plaintiff to the ground. Multiple officers restrained him by holding his arms, legs and neck to the ground. Plaintiff complained about the severe pain they were causing him, clearly stating he needed medical attention. No medical attention was given to Plaintiff.

16. Despite his medical condition, Plaintiff was held on the pavement for an extended period, causing Plaintiff to experience severe pain in his head, wrists, arms, and shoulders. Plaintiff continues to suffer constant pain, limited range of motion, and visible wrist injuries more than a month later, and believes the injuries may be permanent.

17. Officers attempted to force Plaintiff into the patrol car at least three separate times. Each attempt involved officers lifting Plaintiff by his neck while others held his arms and legs.

18. Throughout the incident at the park, the bystanders can be heard on videos continually yelling for officers to "Stop choking" Plaintiff, and to get him medical attention from paramedics who "are trained to handle medical emergencies." They questioned why getting Plaintiff medical aid was taking so long.

19. Officers can be heard telling these bystanders that the ambulance was too far away, "in Walnut Creek" and that it "will be a while."

20. Plaintiff's personal property was seized during the encounter, including approximately $300 in cash, two small bags of marijuana, and a canister of pepper spray belonging to Plaintiff's girlfriend, Shyla Reed. These items were taken without a warrant or consent.

21. After being pinned on the hot pavement in handcuffs for approximately one and one-half hours, an ambulance finally arrived. The paramedics gently placed Plaintiff on a gurney and transported him to Sutter Delta Medical Center in Antioch, California..

22. At the hospital, a lone nurse approached Plaintiff, inquiring where he was hurt. Plaintiff replied," All over my body.". Despite Plaintiff's complaints of painful injuries, and despite the staff having access to medical records which clearly document Plaintiff's medical conditions, the medical staff followed the orders given by the officers, which was overheard by Plaintiff: Medical staff was to x-ray Plaintiff head and shoulders only..

23. At approximately 3:34 p.m. on April 3, 2026, Officer Graner submitted an affidavit seeking a search warrant for a forced blood draw from Plaintiff.

24. A Contra Costa County Superior Court judge signed the warrant authorizing a blood draw and permitting officers to use "reasonable force" to obtain Plaintiff's blood.

25. Officers transported Plaintiff, still in handcuffs, to the Pittsburg Police Department where Plaintiff's blood was drawn. Plaintiff did not consent the blood draw and was subjected

26. to this invasive medical procedure under threat of force. After the blood draw, Plaintiff was transported to the Martinez Detention, still in handcuffs.

27. Despite the continued and persistent complaints made by Plaintiff about the restraints, officers kept Plaintiff's wrists in tight handcuffs for approximately twelve hours. Plaintiff reports the injuries to his wrists are painful, and the pain persists even today.

28. No criminal charges were filed against Plaintiff by the Contra Costa County District Attorney's Office.

29. On April 7, 2026, Plaintiff submitted a California Public Records Act request seeking records related to the incident, including the police report, body worn camera footage, and test results.

30. On April 28, 2026, the Pittsburg Police Department responded to Plaintiff's request by withholding nearly all records, citing Government Code §§ 7923.600 and 7922.000 and claiming the materials were exempt "investigatory records.".

31. On or about May 9, 2026, Plaintiff filed a complaint with the Pittsburg Police Department's Internal Affairs Office and with the Federal Bureau of Investigation Offices in San Francisco and Sacramento.

32. While in the county jail, Plaintiff continue to request medical treatment and was denied.

33. For 12 hours Plaintiff was not medically treated for the resulting injuries he sustained while in police custody.

## VI. CLAIMS

### First Claim

Name the law or right violated:

Fourth Amendment – Unreasonable Seizure / False Arrest 42 U.S.C. § 1983

Name the defendants who violated it:

Officer Gerry Graner and Doe Officers

Plaintiff realleges and incorporates paragraphs 6 through 33 as though fully set forth herein. Defendants, acting under color of state law, seized Plaintiff without reasonable suspicion or probable cause. At the time of the seizure, Plaintiff had not committed, was not committing, and was not about to commit any criminal offense. Plaintiff was lawfully present and engaged in no unlawful conduct. Defendant officers blocked Plaintiff's access to and movement from his vehicle, demanded identification without lawful justification, ordered Plaintiff out of the vehicle, physically restrained him, transported him to a detention facility, and booked him into custody. Plaintiff was detained and arrested without a warrant and without probable cause. Plaintiff was never charged with any criminal offense arising from the incident. The foregoing conduct constituted an unreasonable seizure, unlawful detention, and false arrest in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

SECOND **Claim**

Name the law or right violated:

Fourth Amendment – Excessive Force 42 U.S.C. § 1983

Name the defendants who violated it:

Officer Gerry Graner and Doe Officers

Plaintiff realleges & incorporates paragraphs 6 through 33as though fully set forth herein. Defendants, acting under color of state law, used excessive and objectively unreasonable force against Plaintiff during his detention and arrest. At all relevant times, Plaintiff did not threaten the officers, attempt to flee, resist detention or arrest, or otherwise pose an immediate threat to the safety of the officers or others. Despite the absence of any legitimate law-enforcement need for significant force, Defendant officers grabbed Plaintiff, placed an arm around his neck, lifted him off the ground, and slammed him onto the pavement. After forcing Plaintiff to the ground, the officers held him there and applied handcuffs so tightly that they caused unnecessary pain and injury. Defendants then kept Plaintiff in excessively tight handcuffs for several hours despite his complaints and requests for relief. While Plaintiff was in custody, he requested medical attention for the injuries and pain caused by Defendants' use of force. Defendants ignored or failed to respond adequately to those requests. Under the totality of the circumstances, the force used against Plaintiff was excessive and objectively unreasonable. Defendants' conduct violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and is actionable pursuant to 42 U.S.C. § 1983. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, pain, emotional distress, and other damages in an amount to be proven at trial.

# THIRD CLAIM

**Name the law or right violated:**

Fourth Amendment – Unreasonable Search (Forced Blood Draw) 42 U.S.C. § 1983

**Name the persons who violated it::**

Officer Gerry Graner and Doe Officers

Plaintiff realleges and incorporates by reference paragraphs 6 through 33 as though fully set forth herein. Defendants, acting under color of state law, obtained and executed a warrant authorizing the extraction of Plaintiff's blood. Plaintiff did not consent to the blood draw and objected to the procedure. Defendants transported Plaintiff in handcuffs to a medical facility and compelled him to undergo a blood draw under threat of force. At the time Defendants sought and executed the warrant, Plaintiff had committed no crime, was not operating a motor vehicle, and had been detained and arrested without probable cause.

The warrant was unsupported by probable cause and did not provide a lawful basis for the compelled extraction of Plaintiff's blood. In addition, the manner in which Defendants executed the warrant and carried out the blood draw constituted an unreasonable search and seizure under the circumstances.

The compelled blood draw and related conduct violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and are actionable pursuant to 42 U.S.C. § 1983. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

# FOURTH CLAIM

**Name the law or right violated:**

Municipal Liability Monell v. Department of Social Services (1978) 42 U.S.C. § 1983

**Name the persons who violated it::**

City of Pittsburg

Plaintiff realleges and incorporates by reference paragraphs 6 through 33 as though fully set forth herein. At all relevant times, Defendant City was responsible for establishing policies, practices, customs, training programs, supervision standards, and disciplinary procedures governing the conduct of its police officers. Upon information and belief, the constitutional violations described herein were caused by the City's policies, customs, practices, and longstanding failures in training, supervision, and discipline. These policies, customs, and practices included permitting or encouraging officers to conduct detentions and arrests without adequate legal justification, use excessive force against nonresisting individuals, seek and execute warrants without adequate factual support, and disregard the constitutional rights of persons with whom they came into contact. Upon information and belief, the City knew or should have known that its officers were likely to encounter situations involving investigative detentions, arrests, uses of force, and applications for search warrants, yet failed to provide adequate training, supervision, and accountability regarding the constitutional limits governing such conduct. The City further maintained customs or practices of failing to adequately investigate citizen complaints, failing to discipline officers who engaged in misconduct, and failing to take corrective action in response to known or obvious constitutional violations. These failures communicated to officers that unconstitutional conduct would be tolerated and would not result in meaningful consequences. The City's policies, customs, practices, and deliberate indifference to the need for proper training, supervision, and discipline were a moving force behind and directly caused the violations of Plaintiff's constitutional rights, including the unlawful detention, false arrest, excessive force, and unreasonable search described herein. As a direct and proximate result of Defendant City's conduct, Plaintiff suffered damages in an amount to be proven at trial.

## VII. DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, and each of them, as follows:

A. For compensatory damages in an amount to be determined at trial;

B. For general, special, economic, and noneconomic damages according to proof;

C. For nominal damages as permitted by law;

D. For punitive and exemplary damages against the individual Defendants to the fullest extent permitted by law;

E. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

F. For pre-judgment and post-judgment interest as permitted by law;

G. Total monetary damages amounting to 1.5 million dollars.

H. For other and further relief that the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.

■ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 6/1/26 Sign Name: Lamos D. Sturgis

Print Name: Lamos Sturgis